FILE LEFT

FILED ___ LODGED ___
RECEIVED ___ COPY ___
JUL 12 2005
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

FILED ___ LODGED ___
RECEIVED ___ COPY ___
SEP 19 2005
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

PATRICK L. MEEHAN
United States Attorney
Eastern District of Pennsylvania

DANIEL A. VELEZ
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8454

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

CR 04-968-PHX-SMM

| United States of America, | CR- 4-509 |
|---|---|
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| GREGORY PRIORE, | (Sentencing Guidelines Are Applicable) |
| Defendant. | |

Plaintiff, United States of America, and defendant, GREGORY PRIORE, hereby agree to the following disposition of this matter:

**PLEA**

Defendant will plead guilty to an information charging defendant with a violation of Title 18, United States Code, Section 371, conspiracy to commit mail fraud, a felony offense, as defined by Title 18, United States Code, Section 3559.

**TERMS**

Defendant understands that the guilty plea is conditioned upon the following terms, stipulations, and requirements:

1. **MAXIMUM PENALTIES**

   a. A violation of Title 18, United States Code, Section 371, is punishable by a maximum fine of $250,000.00, a maximum term of imprisonment of 5 years, or both and a term of supervised release of 3 years, pursuant to Title 18, United States Code, Section 3583.

b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the court shall:

(1) Order the defendant to make restitution to any victim of the offense unless, pursuant to Title 18, United States Code, Section 3663 and Section 5E1.1 of the Guidelines, the court determines that restitution would not be appropriate in this case;

(2) Order the defendant to pay a fine, which may include the costs of probation, supervised release or incarceration, unless, pursuant to Title 18, United States Code 3611 and Section 5E1.2(e) of the Guidelines, the defendant establishes the applicability of the exceptions found therein;

(3) Order the defendant, pursuant to Title 18, United States Code, Section 3583 and Section 5D1.1 and 2 of the Guidelines to serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed, and the court may impose a term of supervised release in all other cases.

c. Pursuant to Title 18, United States Code, Section 3013, the court is required to impose a special assessment on the defendant of $100.00. The special assessment is due at the time the defendant enters the plea of guilty, but in no event shall it be paid later than the time of sentencing.

## 2. AGREEMENTS REGARDING SENTENCING

a. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will not oppose defendant's request for probation.

b. Defendant understands that the court is neither a party to nor bound by this agreement and specifically that the United States' recommendation is not binding on the court, and the court may impose any sentence provided for by law. Defendant further understands that if the court imposes a sentence different from what the United States recommends the defendant will not be permitted to withdraw the guilty plea.

1  c. If the court, after reviewing this plea agreement, concludes that any provision is inappropriate, it may reject the plea agreement, giving defendant, in accordance with Fed. R. Crim. P. 11(d)(2)(A), an opportunity to withdraw the guilty plea.

d. The United States retains the unrestricted right to make any and all statements it deems appropriate to the Probation Office and to make factual and legal responses to any statements made by the defendant or defense counsel or objections to the presentence report or to questions by the court at the time of sentencing.

e. <u>Acceptance of Responsibility</u> Assuming the defendant makes full and complete disclosure to the Probation Department of the circumstances surrounding the defendant's commission of the offense and, if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-point or three-point reduction in the applicable sentence guideline offense level, as appropriate, pursuant to Section 3E1.1 of the Guidelines.

**3.   AGREEMENT TO MAKE RESTITUTION**

Defendant specifically agrees to make restitution to Ohio Casualty Group of New Jersey in the amount of $12,381.12.

**4.   AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a. This office will not prosecute the defendant for any offenses committed by the defendant, and known by the government, in connection with the illegal giving up of the 1995 Ford F-150 pickup truck..

This agreement does <u>not</u>, in any manner, restrict the actions of the United States in any other district nor bind any other United States Attorney's Office.

b. The United States is not presently aware of any federal or state investigations or charges.

5. **WAIVER OF DEFENSES AND APPEAL RIGHTS**

a. Defendant hereby waives any right to raise on appeal or collaterally attack any matter pertaining to this prosecution and sentence if the sentence imposed is consistent with the terms of this agreement.

b. The United States likewise will waive its right to appeal the sentence imposed by the court and the manner in which the court determines the defendant's sentence, as long as the sentence is within statutory parameters provided by law for the offense[s] specified above.

6. **WAIVER OF RIGHT TO JURY TRIAL ON SENTENCING FACTORS**

The defendant, by entering this plea, also waives any right to have facts that the law makes essential to the punishment either (1) charged in the information, (2) proven to a jury, or (3) proven beyond a reasonable doubt. The defendant explicitly consents to be sentenced pursuant to the applicable Sentencing Guidelines and to have the sentence based on facts to be found by the sentencing judge by a preponderance of the evidence. The defendant explicitly acknowledges that his plea to the charged offense(s) authorizes the court to impose any sentence, up to and including the statutory maximum sentence, that is authorized by the Sentencing Guidelines.

7. **PERJURY AND OTHER FALSE STATEMENT OFFENSES OR OTHER OFFENSES**

Nothing in this agreement shall be construed to protect the defendant in any way from prosecution for perjury, false declaration or false statement, or any other offense committed by defendant after the date of this agreement. Any information, statements, documents, and evidence which defendant provides to the United States pursuant to this agreement may be used against the defendant in all such prosecutions.

8. **REINSTITUTION OF PROSECUTION**

If defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the United States will be free to prosecute the defendant for all charges of which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, defendant waives any objections, motions, or defenses based upon the Statute of Limitations, the Speedy Trial Act or constitutional restrictions in bringing of the later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial or proceeding as permitted by Fed. R. Crim. P. 11(f).

9. **DISCLOSURE OF INFORMATION TO U.S. PROBATION OFFICE**

c. Defendant understands the United States' obligation to provide all information in its file regarding defendant to the United States Probation Office.

d. The defendant will cooperate fully with the United States Probation Office. Such cooperation will include truthful statements in response to any questions posed by the Probation Department including, but not limited to:

(1) All criminal history information, i.e., all criminal convictions as defined under the Sentencing Guidelines.

(2) All financial information, e.g., present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

(3) All history of drug abuse which would warrant a treatment condition as part of sentencing.

(4) All history of mental illness or conditions which would warrant a treatment condition as a part of sentencing.

10. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

e. Nothing in this agreement shall be construed to protect the defendant from civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture.

f. Further, this agreement does not preclude the United States from instituting any civil or administrative proceedings as may be appropriate now or in the future.

**FACTUAL BASIS**

If this case were to proceed to trial, the United States would be required to prove beyond a reasonable doubt each of the following elements to establish a violation of Title 18, United States Code, Section 371: 1) two or more persons, 2) conspired and agreed, 3) to commit an offense against the United States, and 4) one or more of them did any act to effect the object of the conspiracy. The object of the conspiracy in this case was to commit mail fraud in violation of Title 18, United States Code, Section 1341.

I further agree that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

The defendant owned a 1995 Ford F-150 pickup truck financed by WFS Financial. In the spring of 2001, the defendant experienced trouble keeping up with his child support obligations and felt the truck, which was purchased in 2000 for approximately $14,000, was a financial burden. He told his girlfriend at the time, Janine Kassab, and her friend, Diane LNU, his stress over the cost. Diana mentioned that she knew some people at a junk yard that would take cars off of people's hands. At some point Diana made a telephone call and received instructions as to where Priore should leave his truck. Diana passed this information to Priore. Priore was told not to report the truck stolen until he was contacted some time later. Priore agreed to leave his truck in front of a bowling alley, in a lot that was located across from Home Depot. On or about May 2 or 3, 2001, Priore drove the truck to the designated spot and left the keys in the truck, as instructed. Priore, Kassab, and Diana waited in a nearby parking lot until a black vehicle with tinted windows arrived in the area. A man got out of the black vehicle and

drove off with Priore's truck. On May 9, Priore was contacted by Diana and told to report the truck stolen. That evening, Priore and Kassab went to the movies near the Home Depot, waited until a movie was over, and then Priore called the police to report the truck stolen to the Washington Township Police Department, New Jersey. Shortly thereafter, Priore filed a false claim with Ohio Casualty Group of New Jersey. Priore paid off the approximately $1500 owed on the car that was not covered by the insurance.

Priore filed a stolen vehicle report with the Washington Township Police Department on May 9, 2001, claiming that the vehicle had been stolen from the movie theater parking lot. Shortly thereafter, Priore notified Ohio Casualty Group of New Jersey that his vehicle had been stolen. In his report to the police as well as to the insurance agent, Priore stated that he parked the vehicle on May 9, 2001, in the Regal Cinema Movie Theater parking lot, in Turnersville, New Jersey. Upon leaving the movie, Priore realized the vehicle was gone. Priore also stated that his girlfriend, Kassab, was a witness. Unbeknownst to Priore, law enforcement officials had photographed the F-150 pickup truck as part of an FBI-Philadelphia Police task force chop shop and insurance giveup investigation on May 4, five days prior to Priore reporting the truck stolen. The truck was seen at a chop shop in Philadelphia in the Eastern District of Pennsylvania and was photographed by law enforcement officials in Philadelphia.

On or about May 19, 2001, the defendant mailed through the postal service from Glassboro, New Jersey, an affidavit of vehicle theft to Ohio Casualty Group of New Jersey in which he claimed that his 1995 Ford F-150 pickup had been stolen when defendant knew that this was untrue. On or about July 16, 2001, Ohio Casualty Group in Voorhees, NJ, issued to WFS Financial in Irvine, CA, a laser check in the amount of $12,381.12. On or about September 5, Ohio Casualty Group, issued to New Jersey Division of Motor Vehicles in Trenton, NJ, a laser check in the amount of $20.00 to obtain salvage title.

       Priore was interviewed by the FBI on April 8, 2002, wherein he repeated the same story he had provided the police. On November 6, 2002, Priore was re-interviewed. After initially repeating the same story, Priore was confronted by the agents and informed they were aware of the insurance fraud scheme. Priore then confessed to giving up the truck.

       I understand that I will have to swear under oath to the accuracy of this statement, and if I should be called upon to testify about this matter in the future, any intentional material inconsistencies in my testimony may subject me to additional penalties of perjury or false swearing which may be enforced by the United States under this agreement.

## **DEFENDANT'S APPROVAL AND ACCEPTANCE**

       I have read each of the provisions of the entire plea agreement with the assistance of counsel and understand its provisions.

       I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I will be giving up my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination -- all with the assistance of counsel -- and to be presumed innocent until proven guilty beyond a reasonable doubt.

       <u>Information/Waiver of Indictment</u> I understand that I have a right to have the charge[s] prosecuted by an indictment returned by a concurrence of 12 or more members of a legally constituted grand jury consisting of not less than 16 and not more than 23 members. By signing this agreement, I knowingly waive my right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that I have been prosecuted by way of information.

       I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence will be determined according to the guidelines promulgated pursuant to the Sentencing Reform Act of 1984. I understand that the Guideline Range referred to herein or discussed with my attorney is not binding on the court and is merely an estimate. I further understand that under certain limited circumstances the court may depart upward or downward from the calculated guideline range.

My guilty plea is not the result of force, threats, assurances or promises other than the promises contained in this agreement. I agree to the provisions of this agreement as a voluntary act on my part, rather than at the direction of or because of the recommendation of any other person, and I agree to be bound according to its provisions.

I fully understand that, if I am granted probation or placed on supervised release by the court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that, if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence may otherwise be altered.

I agree that this written plea agreement contains all the terms and conditions of my plea and that promises made by anyone (including my attorney), and specifically any predictions as to the guideline range applicable, that are not contained within this written plea agreement are without force and effect and are null and void.

I am satisfied that my defense attorney has represented me in a competent manner.

|   |   |
|---|---|
| 1 | I am fully capable of understanding the terms and conditions of this plea agreement. I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this plea agreement. |

7/18/05
8/15/04
Date

GREGORY K. PRIORE
Defendant

### DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the plea agreement with my client, in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the sentencing guideline concept with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or by any of its representatives which are not contained in this written agreement. I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

8/23/04
Date

MARANNA MEEHAN, ESQ.
Attorney for Defendant

Panel attorney
Custody Argum
7-12-05

## UNITED STATES' APPROVAL

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

PATRICK L. MEEHAN
United States Attorney
Eastern District of Pennsylvania

Date 7/13/04

TIMOTHY R. RICE
Chief, Criminal Division
Assistant U.S. Attorney

DANIEL A. VELEZ
Assistant U.S. Attorney

[signature]
Asst. U.S. Atty
District of Arizona
7-12-05

## COURT'S ACCEPTANCE

Date 9/15/05

United States District Court Judge

11